**TEXAS PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION, Appellant,**

v.

**Christopher P. JOHNSON, Appellee.**

**No. 03–98–00475–CV.**

Court of Appeals of Texas, Austin.

Sept. 23, 1999.

Hallie D. Ferguson, Mullen, MacInnes & Redding, Ltd., Austin, for Appellant.

Jay K. Gray, Noteboom and Gray, Hurst, for Appellee.

Before Justices JONES, YEAKEL and POWERS.*

POWERS, Justice (Retired).

The Texas Property and Casualty Insurance Guaranty Association (the "Association") appeals from a summary judgment recovered by Christopher P. Johnson in his suit against the Association arising out

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by as-

of the undisputed facts set forth below. We will affirm the judgment.

### THE CONTROVERSY

After sustaining personal injuries in the course and scope of his employment, Johnson sued his employer's workers-compensation carrier, Rockwood Insurance Company, to set aside an antecedent award of the Texas Industrial Accident Board and to recover amounts allegedly owed him under the applicable workers-compensation statutes. Following a trial before a jury, the district court rendered judgment on the verdict for Johnson in the principal amount of $63,346.33, together with an order that Rockwood pay Johnson's past and future medical expenses. The judgment became final for purposes of appeal on June 28, 1991. It is presently a subsisting judgment. It has never been satisfied; it has never been attacked directly by appeal or bill of review. It is not contended that the judgment was obtained by consent, agreement, compromise, settlement, collusion, fraud, mistake, wrongful act, or accident.

A little over three months after the judgment became final for purposes of appeal, the Commissioner of Insurance (in October 1991) designated Rockwood an "impaired insurer." This designation activated the Association's authority and duties under article 21.28–C of the Insurance Code, titled the Texas Property and Casualty Insurance Guaranty Act. *See* Tex. Ins.Code Ann. art. 21.28–C (West Supp. 1999) (the "Act"). Respecting claims against impaired insurers, the Act directs that the Association "pay covered claims that exist before the designation of impairment," an obligation that "is satisfied by paying to the claimant the full amount of a covered claim for benefits" owed by the impaired insurer. Act § 8(a).

A receivership proceeding was initiated against Rockwood in a Travis County district court. Johnson filed in the proceed-

signment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

ing a claim based on his judgment; the receivership proceeding was closed without payment of his claim and he sued the Association in the present cause to recover thereon. The parties stipulated that Johnson's claim was a "covered claim" within the meaning of the Act. *Cf. Lopez v. Texas Property & Casualty Ins. Guar. Ass'n,* 990 S.W.2d 504 (Tex.App.—Austin 1999, no pet.).[1]

Johnson moved for summary judgment on the undisputed facts outlined above. While the Association's response to the motion is not included in our appellate record (although the Association requested its inclusion), it is evident from the record as a whole and the parties' briefs that their dispute derives entirely from their contrary views on the question of statutory construction discussed below.

The trial court sustained Johnson's motion for summary judgment and the Association appeals now on a single issue: "The trial court erred in granting [Johnson's] motion for summary judgment because Texas Insurance Code, Article 21.28–C, section 8(d), specifically authorizes [the Association] to review and contest *all* pre-receivership judgments." (emphasis added).

## DISCUSSION AND HOLDINGS

The disputed statute provides as follows:

The association shall investigate and adjust, compromise, settle, and pay covered claims to the extent of the association's obligation and deny all other claims. The association may review settlements, releases, and judgments to which the impaired insurer or its insureds were parties to determine the extent to which those settlements, releases, and judgments may be properly contested. Any judgment taken by default or consent against an insured or the impaired insurer, and any settlement, release, or judgment entered into by the insured or the impaired insurer, is not binding on the association ... Act § 8(d).

In contending that the statute authorizes the Association to review and contest all pre-receivership judgments, the Association means that the statute empowers the Association to contest, if it believes proper, the issues of fact or law that are ordinarily adjudicated and concluded by a final judgment. For example, the Association contends it may now contest the underlying issues of fact and law involved in Johnson's original workers-compensation claim against Rockwood, even though that claim was tried and reduced to judgment before Rockwood was designated an impaired insurer and before its property and affairs came within the control of the receivership court. The Association contends its interpretation of section 8(d) is supported by the statutory language and that any other interpretation would deprive section 8(d) of any force and effect; moreover, the claimed statutory authority is necessary, in the Association's opinion, because "insurers may have stopped fully defending claims prior to" their being designated impaired. We believe the language of section 8(d) will not reasonably bear such an interpretation.

The first sentence of section 8(d) deals with unliquidated claims against an impaired insurer, and directs that the Association investigate, adjust, compromise, settle, and pay covered claims to the extent of the Association's obligations under the Act, and to "deny all other claims." In light of the succeeding sentences of section 8(d), it appears that the statutory directive to "deny all other claims" refers to all other unliquidated claims against the im-

---

1. In *Lopez,* the Association did not assail the legal effect of the judgment against the impaired insurer. Rather, the Association reviewed that judgment only to compare the identity of the judgment defendant (Domingo Garcia, Jr.) to the identity of the policy insured (Domingo Garcia, Sr.). Because the former was not an insured, it was undisputed that the claim was *not* a covered claim. The claimants contended, however, that the Association was estopped from raising that defense. *See Lopez,* 990 S.W.2d at 505.

paired insurer. The first sentence of section 8(d) is not directly applicable in the present case, of course, because Johnson's claim is a liquidated claim in the form of a final judgment, a matter dealt with in the next two sentences of section 8(d).

The second sentence of section 8(d) refers to claims that have culminated in "settlements, releases, and judgments," and empowers the Association to review such claims "to determine the extent to which [they] may be properly contested." We need discuss only the word "judgments," found in this sentence, since the words "settlements" and "releases" are not in issue here.

The sole textual basis for the Association's theory is that the word "judgments," found in the second sentence, is not there qualified expressly. One may not, however, assign meaning to the word "judgments" in isolation from the remaining parts of the statute dealing with the same matter. The very next, or third, sentence of section 8(d) declares that certain types of judgments "are not binding on the association," namely judgments "taken by default or consent against" an impaired insurer, and any "judgments entered into" by an impaired insurer.[2] We

construe the last named to mean "judgments entered into" by the impaired insurer's agreement or its confession of judgment; we can imagine no other hypotheses under which a litigant can be said to *enter into* a judgment.

Based on the legislature's express purposes [3] underlying the Act and the text of section 8(d), we believe the Association's authority to review and contest pre-receivership judgments extends to the following: (1) because the legislature has declared that default, consent, and agreed judgments are not binding on the Association, it may review and contest such judgments even though they antedate a designation of impairment and a receivership proceeding; and (2) respecting any other pre-receivership judgment against an impaired insurer, the Association may review such judgments and contest them as a party might do on legal or equitable grounds in a motion for new trial, an appeal, a bill of review or other suit in equity to set aside or enjoin the enforcement of a subsisting judgment based on extrinsic fraud, accident, wrongful act of an opponent, or mistake.[4]

To say, however, that the Association is not bound by any pre-receivership

2. A default judgment, defined broadly, is one rendered on the pleadings without the taking of evidence; more specifically, it is one taken on a defendant's failure to file an answer by the time the docket is called on appearance day. *See Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex.1979); Tex.R. Civ. P. 239; 5 *McDonald Texas Civil Practice* § 27.51 at 106 (1992). An agreed judgment results from the parties' agreement of settlement and compromise and their consent to rendition of a judgment on agreed terms. *Id.* § 27.50 at 101–02. The terms "consent judgment" and "agreed judgment" are essentially synonymous, but the latter term also includes confessions of judgment governed by the rules of procedure. *See* Tex.R. Civ. P. 314; *Id.* §§ 27.49, .50 at 100–06.

3. The purposes of the Act are to:
   (1) provide a mechanism for the payment of covered claims under certain insurance policies and to avoid excessive delay in payment; (2) avoid financial loss to claimants or policyholders because of the impairment

of an insurer; (3) assist in the detection and prevention of insurer insolvencies; and (4) provide an association to assess the cost of that protection among insurers.
Act § 2 (West Supp.1999).

4. A bill-of-review proceeding evidently may be founded on any recognized equitable basis for setting aside a previous judgment. *See, e.g., Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex. 1998) (extrinsic "fraud, accident or wrongful act" of an opponent). Judgments resulting from mistake are subject to being set aside or restrained in their enforcement, in equity, on the same grounds as judgments resulting from accident. *See* 3 *Pomeroy's Equity Jurisprudence* § 836 at 276, § 871 at 392–95 (5th ed.1941). Under the doctrine that some degree of finality must attach to judgments, relief in equity is not easily obtained and the applicant must overcome various procedural and substantive impediments to prevail. *See Montgomery v. Kennedy*, 669 S.W.2d 309, 312 (Tex.1984); *Alexander v. Hagedorn*, 148 Tex. 565, 226 S.W.2d 996, 998 (1950).

judgment whatever is not warranted by the statutory language employed in section 8(d). That section does not declare that *all* judgments are without binding effect as to the Association. The statute declares instead that only selected types of pre-receivership judgments—those resulting from default, consent, and agreement—are not binding on the Association; and it is only by force of the legislative declaration that these selected types of judgments "may be properly contested" outside the legal and equitable actions that are available generally to attack any subsisting judgment. If no pre-receivership judgments whatever are binding on the Association, because the word "judgments" is not qualified in the second sentence of section 8(d), then there would be no reason for the legislature to declare, in the next sentence, that judgments resulting from default, consent, and agreement are not binding on the Association.

The Association's contrary interpretation (1) denies any legal effect whatever to the third sentence of section 8(d) (2) renders that sentence superfluous, (3) negates entirely the legislature's clearly expressed intention to *restrict* its declarations of non-binding effect to judgments resulting from default, consent, and agreement, and (4) defeats by so much the legislative intention.[5]

We hold accordingly and affirm the trial-court judgment.

---

**5.** The applicable rules of statutory construction are familiar: We must give statutory language a true and fair interpretation, and a meaning that is not forced, exaggerated, or strained; the statutory words must fairly and clearly sustain the meaning assigned. *See Railroad Comm'n v. Miller,* 434 S.W.2d 670, 672 (Tex.1968). We must give effect, if reasonably possible, to every part of a statute; and we may not adopt a construction that will render any part of the statute inoperative, superfluous, or without legal effect. *See Ex parte Pruitt,* 551 S.W.2d 706, 709 (Tex.1977); *Perkins v. State,* 367 S.W.2d 140, 146 (Tex. 1963); 2A *Sutherland Statutory Construction* § 46.06 at 119–20 (5th ed.1993). Should there occur any repugnance between statutory provisions, the matter must be adjusted so that each provision has a meaning that will permit both to stand in harmony. *See Commissioners Court v. Criminal District Attorney,* 690 S.W.2d 932, 936 (Tex.App.—Austin 1985, writ ref'd n.r.e.). The rules of statutory construction aim, of course, at giving effect to the legislative intention.