

OFFICE of the ATTORNEY GENERAL

GREG ABBOTT

December 23, 2002

The Honorable Robert Duncan
Interim Chair
Natural Resources Committee
Texas State Senate
P. O. Box 12068
Austin, Texas 78711

Opinion No. GA-0003

Re: Authority of the Texas Department of Transportation over construction and maintenance of utility lines along a controlled-access highway (RQ-0563-JC)

Dear Senator Duncan:

Your predecessor as chair of the Senate Natural Resources Committee asked this office a question concerning the authority of the Texas Department of Transportation ("TxDOT") to regulate utility lines on a controlled-access highway in relation to electric and gas utilities' statutorily granted rights-of-way along highways generally.[1] We conclude that the rights of utilities pursuant to sections 181.022 and 181.042 of the Utilities Code to lay and maintain gas and electric lines are subject to reasonable regulation. Utility rights-of-way for those purposes are uses of the road subordinate to its use for highway purposes. The Utility Accommodation Policy is, as a matter of law, a reasonable exercise of TxDOT's power of control over the operation of the state highway system, as well as its legislatively granted power under section 203.031 of the Transportation Code over access to controlled-access highways. *See* 43 TEX. ADMIN. CODE §§ 21.31-.56 (2002) (chapter 21, subchapter C, Utility Accommodation Policy). Whether any particular application of that policy is reasonable would require factual findings that cannot be made in the opinion process.[2] The placement of public utility lines in a highway right-of-way is, however, subject to reasonable regulation. The requirement that utilities show that their proposed placement of electric or gas lines will not have an adverse impact on the use of the highway by the public, or on the safety of the public, is not inherently unreasonable.

As your predecessor explained the controversy that gave rise to this request, a public utility seeks to place electric and gas lines in the right-of-way along a state highway in the Houston area. *See* Request Letter, *supra* note 1, at 1. The highway in question has been designated a controlled-

---

[1] *See* Letter from Honorable J.E. "Buster" Brown, Chair, Natural Resources Committee, Texas State Senate, to Honorable John Cornyn, Texas Attorney General (June 4, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

[2] *See* Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2 ("[I]nvestigation and resolution of fact questions . . . cannot be done in the opinion process."); M-187 (1968) at 3 ("[T]his office is without authority to make . . . factual determinations."); O-2911 (1940) at 2 ("[T]his . . . presents a fact question which we are unable to answer.").

access highway under section 203.031 of the Transportation Code, which permits the Transportation Commission (the "commission"), TxDOT's policy-making body, to designate such roads and to "deny access to or from a controlled[-]access highway from or to adjoining public or private real property and from or to a public or private way intersecting the highway, except at specific locations designated by the commission." TEX. TRANSP. CODE ANN. § 203.031(a)(2) (Vernon 1999); *see also id.* §§ 201.101-.104 (commission's powers and duties). Such denial of access defines a "controlled-access highway." *See id.* § 203.001(1). In common parlance, what is under discussion here is generally called a freeway.

Title 23 of the Code of Federal Regulations, part 645, governing the accommodation of utilities on federally-funded highways such as those at issue here, mandates that any such accommodation "will not . . . affect highway or traffic safety." 23 C.F.R. § 645.211(a) (2001). Pursuant to its authority under section 203.031(a)(2) of the Texas Transportation Code, and in order to comply with the Code of Federal Regulations, the commission has adopted the Utility Accommodation Policy regulating the placement of utility lines along the right-of-way of controlled-access highways. *See* 43 TEX. ADMIN. CODE §§ 21.31-.56 (2002) (chapter 21, subchapter C). Under section 21.37(c) of that policy, "[n]ew utilities will not be permitted to be installed longitudinally within control of access lines of any freeway, except that in special cases such installations may be permitted under strictly controlled conditions." *Id.* § 21.37(c). In order to obtain such permission from TxDOT, the utility owner must show that the lines will not have an adverse effect on the safety or the operation of the road and that "any alternative location would be contrary to the public interest." *Id.* Your predecessor asked specifically whether the Utility Accommodation Policy precludes an electric utility "from exercising its statutory right to construct, maintain, and operate lines" under section 181.042 of the Utility Code, or a gas utility "from exercising its statutory right to lay and maintain gas facilities" under section 181.022 of that code. Request Letter, *supra* note 1, at 2.

The utility company takes the view that it need not make a showing that its proposed placement of facilities would not have an adverse impact, on the ground that it has what your predecessor described as an "express and broad right to construct and maintain . . . facilities along public highways." *Id.* at 1. This argument is based upon two provisions of the Utility Code, sections 181.022 and 181.042, which give gas and electric facilities, respectively, the right to construct and maintain facilities along, across, over, or under public highways. *See* TEX. UTIL. CODE ANN. §§ 181.022, .042 (Vernon 1998). Section 181.022 of the code gives a gas utility "the right to lay and maintain a gas facility through, under, along, across, or over" public highways, roads, streets, and alleys, while section 181.042 gives an electric utility a similar right "to construct, maintain, and operate lines." *Id.* Nothing in the language of either provision, however, suggests that the rights of way so granted may not be subject to reasonable restriction. The utility company's argument also relies upon a 1963 opinion of this office, Attorney General Opinion C-139, which states that "[t]he Highway Commission has no authority to refuse permits to place gas pipelines along highway rights of way . . . ." Tex. Att'y Gen. Op. No. C-139 (1963) at 3. The facts in opinion C-139 did not, however, concern a controlled-access highway. *See id.*[3] Moreover, in light of the powers granted the Transportation Commission with respect to such highways, we think this language is too broad.

---

[3]*See* Letter from D.C. Greer, Texas Highway Department, to Honorable Waggoner Carr, Texas Attorney General (Aug. 14, 1963) (on file with Opinion Committee).

Read in isolation, as opinion C-139 appears to have read the statutory predecessor of section 181.022,[4] that section and section 181.042 may be susceptible to the interpretation proposed by the utility company in this case. However, such a reading fails to take into account section 203.031 of the Transportation Code. Section 203.031 permits the Transportation Commission to:

> (1) designate a state highway of the designated state highway system as a controlled[-]access highway;
>
> (2) deny access to or from a controlled[-]access highway from or to adjoining public or private real property and from or to a public or private way intersecting the highway, except at specific locations designated by the commission;
>
> (3) close a public or private way at or near its intersection with a controlled[-]access highway; [and]
>
> (4) designate locations on a controlled[-]access highway at which access to or from the highway is permitted and determine the type and extent of access permitted at each location;
>
> . . . .

TEX. TRANSP. CODE ANN. § 203.031 (Vernon 1999).

As we have noted above, pursuant to its authority under section 203.031, as well as its general authority under section 203.002 of the Transportation Code to "lay out, construct, maintain, and operate a modern state highway system, with emphasis on the construction of controlled[-] access highways," *see id.* § 203.002(a)(1), the commission has promulgated a Utility Accommodation Policy that regulates the placement of utility lines along controlled-access facilities. That policy requires that utility lines "be located to avoid or minimize the need for adjustment for future highway improvements and to permit access to the utility lines for their maintenance *with minimum interference to highway traffic.*" 43 TEX. ADMIN. CODE § 21.37(a) (2002) (emphasis added). To that end, the maintenance of utility lines on controlled[-]access highways may be permitted by access from frontage roads, or adjacent roads, streets, or trails along or near the highway right-of-way lines "to the extent practicable, *without access from the through traffic roadways or ramps.*" *Id.* § 21.37(b) (emphasis added). Installation of new utilities is not permitted "longitudinally within control of access lines of any freeway," except in special cases when the utility owner makes the showings discussed above. *Id.* § 21.37(c).

The provisions of section 21.37 were adopted in part to comply with federal requirements. Pursuant to 23 U.S.C. § 109 (2000), the Secretary of Transportation has issued guidelines for the accommodation of utilities on federal-aid highways. These guidelines require "[e]ach State transportation department" such as TxDOT to "submit an accommodation plan . . . which addresses

---

[4]*See* Act of May 31, 1951, 52d Leg., R.S., ch. 470, 1951 Tex. Gen. Laws 829 (enacting article 1463b of the Revised Civil Statutes).

how the State highway agency will consider applications for longitudinal utility installations within the access control lines of a freeway." 23 C.F.R. § 645.209(c)(1) (2001). If such access is permitted, "the plan must address how [TxDOT] will oversee such use consistent with [federal law and regulations] and the safe and efficient use of the highways." *Id.* Among the criteria that must be satisfied is that "[t]he effects utility installations will have on highway and traffic safety will be ascertained, *since in no case shall any use be permitted which would adversely affect safety.*" *Id.* § 645.209(c)(2)(i) (emphasis added). Further, the environmental and economic effects of utility accommodation must be considered, *see id.* § 645.209(c)(2)(ii), as must "any interference with or impairment of the use of the highway in such right-of-way which would result from the use of such right-of-way for the accommodation of such utility facility." *Id.* § 645.209(c)(2)(iii).

Although we cannot speak to any particular application of the Utility Accommodation Policy, it appears to be a reasonable application of the Transportation Commission's power under Transportation Code section 203.031 to regulate or deny access to or from controlled-access highways. An administrative agency has only the powers expressly granted to it by the legislature, along with those necessarily implicit in its statutorily granted authority. *See Pub. Util. Comm'n, v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 315-16 (Tex. 2001). Moreover, an administrative agency may not impose burdens upon an entity it regulates beyond those permitted by the legislature. *See id.* The question therefore is whether any such regulatory burden is in fact authorized and reasonable. In this case, section 203.031 provides the necessary authority for the policy.

Moreover, the policy does not impose an impermissible burden on the utility rights-of-way. The statutory rights granted utilities are not absolute, given that they must be subordinate to the principal reason for the creation of public roads. "The main purposes of roads and streets are for travel and transportation, and while public utilities may use such roads and streets for the laying of their telegraph, telephone, and water lines, and for other purposes, such uses are subservient to the main uses and purposes of such roads and streets." *City of San Antonio v. Bexar Metro. Water Dist.*, 309 S.W.2d 491, 492 (Tex. Civ. App.–San Antonio 1958, writ ref'd ); *accord City of San Antonio v. United Gas Pipe Line Co.*, 388 S.W.2d 231, 234 (Tex. Civ. App.–San Antonio 1965, writ ref'd n.r.e.) ("The primary purpose for which highways and streets are established and maintained is for the convenience of public travel. The use [of] such highways and streets for water mains, gas pipes, telephone and telegraph lines is secondary and subordinate to the primary use for travel, and such secondary use is permissible only when not inconsistent with the primary object of the establishment of such ways."). Section 21.37(c) of the Utility Accommodation Policy, which permits certain placements of utility lines within the control of access lines of a freeway only upon a showing that the safety and primary purpose of the freeway will not be adversely affected, is intended to allow for the use by public utilities of their statutorily granted rights-of-way on Texas highways while insuring that the primary purposes of such highways are achieved. *See* 43 TEX. ADMIN. CODE § 21.37(c) (2002).

An argument similar to that made by the utility company here was presented and rejected in *New York Telephone Co. v. Commissioner, New York State Department of Transportation*, 307 N.Y.S.2d 945 (N.Y. Special Term, 1970). In that case the telephone company argued that it had a statutory right to install its cable within the right-of-way of a controlled-access highway, and further argued that the New York Department of Transportation's refusal to allow it to do so violated its

rights under the New York and federal constitutions. The court in that case noted that "federal standards require that all property within the right-of-way boundaries of the highway in question shall be devoted exclusively to public highway purposes, and that the State highway departments are charged with the responsibility for preserving such right-of-way free of all public and private installations, facilities or encroachments." *New York Tel. Co.*, 307 N.Y.S.2d at 949. It found that under the New York statute, "plaintiff acquired a mere privilege or permit to use a portion of a public highway for a special purpose, subject to the public interest." *Id.* at 948. In the present case as well, as we have noted, the Utility Accommodation Policy has been adopted to comply with the relevant federal standards.

Finally, in our view, sections 181.022 and 181.042 of the Utility Code are not in irreconcilable conflict with section 203.031 of the Transportation Code, as your predecessor's questions suggest. We are obliged to prefer a reading of the statutes that harmonizes them, giving each effect. *See La Sara Grain Co. v. First Nat'l Bank,* 673 S.W.2d 558, 565 (Tex. 1984), *accord Tex. Prop. & Cas. Ins. Guar. Ass'n v. Johnson,* 4 S.W.3d 328, 333 n.5 (Tex. App.–Austin 1999, pet. denied). In this instance, the statutes can be harmonized by holding that the Utility Code provisions grant a right that is subject to regulation and must be exercised consistently with the primary purpose of the highway system, the safe transport of persons and goods. Further, were we to determine that the provisions here could not be harmonized, section 203.031 would prevail as a specific exception for controlled-access highways to the general rule of the Utility Code provisions. *See* TEX. GOV'T CODE ANN. § 311.026 (Vernon 1998) (specific provision controls over general). To the extent that Attorney General Opinion C-139 (1963) is inconsistent with this opinion, it is overruled.

## S U M M A R Y

The Texas Department of Transportation's Utility Accommodation Policy, *see* 43 TEX. ADMIN. CODE §§ 21.31-.56 (2002), does not impermissibly burden statutory rights-of-way granted to utilities for gas and electric lines pursuant to sections 181.022 and 181.042 of the Utilities Code.

To the extent that it is inconsistent with this opinion, Attorney General Opinion C-139 (1963) is overruled.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General, Opinion Committee