**Arnulfo ZAPATA, Petitioner,**

v.

**FORD MOTOR CREDIT COMPANY et al., Respondents.**

No. B–9889.

Supreme Court of Texas.

May 6, 1981.

Rehearing Denied June 3, 1981.

Boyle & Grigson, James G. Boyle, Austin, for petitioner.

Baker & Botts, Randall A. Hopkins, Houston, Perkins, Oden, Warburton, McNeill & Adami, J. G. Adami, Alice, for respondents.

McGEE, Justice.

Arnulfo R. Zapata sued Yates Ford, Inc. and Ford Motor Credit Company (FMCC) for statutory penalties, alleging that certain provisions in a retail installment contract violate the Texas Consumer Credit Code.[1] The trial court granted Zapata's motion for partial summary judgment and, after a nonjury trial on the issue of attorney's fees, rendered final judgment against Yates Ford and Ford Motor Credit Company. The court of civil appeals reversed the judgment of the trial court and rendered judgment that Zapata take nothing. 605 S.W.2d 362. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

On July 15, 1976, Zapata purchased a new pickup truck from Yates Ford in Austin, Texas. He financed the purchase by executing a retail installment contract which was later assigned to FMCC. The contract was on a preprinted form prepared and supplied by FMCC. Twenty-six months later, in September 1978, Zapata sued to recover a $2,000 statutory penalty and reasonable attorney's fees under section 8.01(b) for violations of the Credit Code.[2] When suit was filed, Yates Ford and FMCC had not repossessed or attempted to repossess the truck; Zapata was current in his obligations under the contract, and Zapata claimed no actual damages. The recovery sought by Zapata is purely penal in nature.

---

1. Title 79 (Article 5069, Tex.Rev.Civ.Stat.Ann.) is not a code which has been promulgated pursuant to this State's continuing statutory revision program. However, for convenience and clarity we will refer to Article 5069 throughout this opinion as the "Credit Code" or "Code." All statutory references are to sections under Article 5069, unless otherwise noted. All emphases are ours.

2. Section 8.01(b) provides:
   "(b) Any person who violates this Subtitle or Chapter 14 of this Title by (i) failing to perform any duty or requirement specifically imposed on him by any provision of this Subtitle or Chapter 14 of this Title, or by (ii) committing any act or practice prohibited by this Subtitle or Chapter 14 of this Title, shall be liable to the obligor for a penalty in an amount equal to twice the time price differential or interest contracted for, charged, or received but not to exceed $2,000 in a transaction in which the amount financed is $5,000 or less, ..."

Zapata moved for a partial summary judgment. He alleged the retail installment contract contained seven violations of the Credit Code.[3] The trial court granted the motion and assessed a $2,000 penalty against Yates Ford and FMCC but did not say on which violation it based its ruling. After a trial on the issue of attorney's fees, the trial court rendered final judgment against Yates Ford and FMCC, jointly and severally, for a $2,000 penalty and $5,000 in attorney's fees. The court of civil appeals reversed the judgment and rendered judgment that Zapata take nothing. The court of civil appeals ruled against Zapata on each alleged violation.

We granted Zapata's application for writ of error on two points of error. In the first point, Zapata contends the waiver clause in paragraph nineteen (19) of the retail installment contract violates section 7.07(4) of the Code. This section prohibits waiver of buyer's rights of action against a seller in installment contracts for illegal acts committed in the repossession of a motor vehicle. In the second point, he argues the retail installment contract fails to "clearly and conspicuously" disclose that physical damage insurance is required in violation of section 7.06(3) of the Code. We hold the waiver clause violates section 7.07(4). Thus, we find it unnecessary to discuss Zapata's point concerning a violation of section 7.06(3) because a single violation of the Code will trigger the penalties under section 8.01.

The waiver clause is found in paragraph nineteen (19) on the back of the contract. It provides:

"Any personalty in or attached to the property when repossessed may be held

by Seller without liability and Buyer shall be deemed to have waived any claim thereto unless written demand by certified mail is made upon Seller within 24 hours after repossession."

Zapata contends the second part of the waiver clause, which provides "... Buyer shall be deemed to have waived any claim thereto unless written demand by certified mail is made upon Seller within 24 hours after repossession," violates section 7.07(4) of the Code. He relies on *Southwestern Investment Company v. Mannix*, 557 S.W.2d 755 (Tex.1977), and *Ford Motor Credit Company v. Cole*, 503 S.W.2d 853 (Tex.Civ.App.—Forth Worth 1973, writ dism'd).

Section 7.07(4) provides:

"No retail installment contract or retail charge agreement shall:

. . . .

"(4) *Provide for a waiver of the buyer's rights of action against the seller or holder* or other person acting therefor *for any illegal act committed* in the collection of payments under the contract or agreement or *in the repossession of a motor vehicle;* ..."

In *Southwestern Investment Company v. Mannix, supra,* the question was whether a provision in a retail installment contract of goods violated section 6.05(4) of the Code. The statutory language in section 6.05(4) is identical to the statutory language in section 7.07(4). However, section 6.05(4) applies to retail installment sales of goods generally and section 7.07(4) applies exclusively to motor vehicle installment sales. The contract provision in *Mannix* provided:

---

**3.** Zapata alleged the retail installment contract violated the Credit Code in the following respects: (1) failure to clearly and conspicuously disclose the amount charged for the mechanical breakdown insurance in violation of Article 5069–7.06(8); (2) overcharge of the license, title and registration fees which is unauthorized by Article 5069–7.01(f); (3) false labeling of required insurance as optional insurance in violation of Article 5069–7.06(3); (4) failure to properly identify Ford Motor Credit Company as a creditor in violation of Art. 5069–14.11(a);

(5) improperly reserving a security interest in unearned premiums on the reverse side of the contract in violation of Art. 5069–14.17(a)(1); (6) including the overcharge of the license, title and inspection fee charged in the Amount Financed thereby charging an undisclosed finance charge in violation of Article 5069–14.04; (7) waiver of the act of illegally converting personalty committed in connection with repossession of the collateral, in violation of Article 5069–7.07(4).

"Nothing shall prevent the Secured Party from removing [the property] from any premises to which same may be attached, upon default or breach of this Retail Installment Contract and Security Agreement or any part thereof, and the Debtor agrees to sustain the cost of repairs, if any, of any physical injury to the real estate caused by such removal."

In *Mannix*, we held this provision violated section 6.05(4) because it waived a buyer's right of action for a tort committed in the repossession of goods. We explained the Legislature intended for such unconscionable contract provisions to be unenforceable and to penalize creditors for including these provisions in installment contracts.

In *Ford Motor Credit Company v. Cole, supra*, the same waiver clause was before the Fort Worth Court of Civil Appeals. That was a venue case where the court stated it would not be permissible to construe the waiver clause to exempt Ford Motor Credit Company from liability should it convert or deprive the buyer of use of unsecured property. This construction of the clause, the court concluded, would be unenforceable as contrary to the public policy of this State.

█ The parties concede the first part of the waiver clause, which provides "[a]ny personalty in or attached to the property when repossessed may be held by Seller without liability . . .," merely restates the bailor-bailee relationship existing at common law with respect to personalty in a repossessed vehicle. However, a person in lawful possession of personalty may still be guilty of trespass or conversion for its unlawful detention. A detention of personalty lawfully obtained, after demand, is a wrongful act constituting a trespass. *Brite v. Pfeil*, 334 S.W.2d 596 (Tex.Civ.App.—San Antonio 1960, no writ); *see Mountain*

States Tel. & Tel. Co. v. Vowell Construction Co.*, 161 Tex. 432, 341 S.W.2d 148 (1960). The commission of a trespass does not necessarily mean the actor will be liable for damages. Restatement (Second) of Torts § 217, Comment a (1965). Liability does not attach, unless the wrongful detention is accompanied by actual damage to the property or deprives the owner of its use for a substantial period of time. *See Lyle v. Waddle*, 144 Tex. 90, 188 S.W.2d 770 (1945); Restatement (Second) of Torts § 218 (1965). Even in the absence of damages, a trespass has occurred which is important in determining the legal relations between the parties.[4]

█ If the wrongful detention seriously interferes with the owner's right to control the personalty, there is not only a trespass but a conversion which justifies an action to require the actor to pay the full value of the personalty. *Smith v. Texas & N. O. Ry. Co.*, 101 Tex. 405, 108 S.W. 819 (1908); *Norris v. Bovina Feeders, Inc.*, 492 F.2d 502 (5th Cir. 1974). Section 237 of the Restatement of Torts (Second) reads: "One in possession of a chattel as bailee or otherwise who, on demand, refuses without proper qualification to surrender it to another entitled to its immediate possession, is subject to liability for conversion." Trespass and conversion are torts designed to protect against interferences with one's possessory interest in personalty. They are "illegal acts" within the meaning of section 7.07(4) of the Credit Code. *See Southwestern Investment Company v. Mannix, supra.*

█ The waiver clause in this case waives a buyer's right of action for the wrongful detention of unsecured personalty taken in the repossession of a motor vehicle. If the buyer fails to demand his property within 24 hours after repossession, all

---

4. Comment a to § 217 of the Restatement (Second) of Torts states in part:

"A trespass, though not actionable . . ., may nevertheless be important in the determination of the legal relations of the parties. Thus, the fact that one person is committing a trespass to another's chattel, while it may not be actionable because it does no harm to

the chattel or to any other legally protected interest of the possessor, affords the possessor a privilege to use force to defend his interest in its exclusive possession. . . . So too, the fact that one person is a trespasser is important in determining the duty of care owing to him by the possessor of the chattel. . . . "

claims for its subsequent wrongful detention are waived. The fact the wrongful detention waived does not occur until at least 24 hours "after repossession" and not "in the repossession" as stated in section 7.07(4) is immaterial because the doctrine of trespass ab initio is followed in Texas. *See Humphreys Oil Co. v. Lile*, 262 S.W. 1058 (Tex.Civ.App.—Waco 1924), *aff'd*, 277 S.W. 100 (Tex.Comm'n App. 1925, judgment adopted); *Brite v. Pfeil, supra, American Mortgage Corp. v. Wyman*, 41 S.W.2d 270 (Tex.Civ.App.—Austin 1931, no writ); and *Lyles v. Meyer*, 293 S.W. 295 (Tex.Civ.App. —San Antonio 1927, writ ref'd). Under this doctrine, a wrongful detention of unsecured personalty 24 hours after repossession, by one in lawful possession, is a trespass from the time of repossession. *Id.* This waiver clause is not only contrary to public policy, *see Ford Motor Credit Company v. Cole, supra*, but it is also prohibited by section 7.07(4) of the Credit Code.

■ Yates Ford and FMCC argue that the waiver clause does not waive a buyer's "right of action" but merely his claim to the personalty in the repossessed vehicle. They also urge the word "deemed" in the waiver clause only amounts to a rebuttable presumption of a waiver and not a conclusive presumption. The use of the word "deemed" and "claim" does not save a contract clause which otherwise violates section 7.07(4). The construction placed upon this contract language by Yates Ford and FMCC is contrary to the express legislative intent in enacting the Credit Code.

We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.