OMNIBUS INTERNATIONAL, INC., Appellant,

v.

AT & T, INC., Cellular Plus+, Inc., and Fax Works, Appellees.

No. 05–01–01039–CV.

Court of Appeals of Texas, Dallas.

July 31, 2003.

---

Carrie Flick; Ashton Bachynsky, Glickman & Hughes, LLP, Houston, for appellant.

Patrick R. Cowlishaw, Ella Jean Martinez, Jackson and Walker; Stephen E. Friend, Vial Hamilton Koch & Knox,

L.L.P.; Robert C. Wendland, Sewell & Anderson, L.L.P.; Ira E. Tobolowsky, Tobolowsky & Associates, P.C.; William C. Odeneal, Odeneal & Odeneal, Dallas, for appellees.

Before Justices JAMES and FRANCES MALONEY.[1]

## OPINION ON MOTION FOR REHEARING

Opinion by Justice FRANCES MALONEY (Assigned).

We grant appellant's motion for rehearing and withdraw our opinion of November 21, 2002. This is now the opinion of the Court. Omnibus International, Inc. sued AT & T, Inc., Cellular Plus+, Inc., and Fax Works (collectively AT & T). Omnibus alleged that it and other Texans received thousands of facsimile advertisements, sent without permission, which violated section 35.47 of the Texas Business and Commerce Code (the State Code) and the Telephone Consumer Protection Act (the TCPA) and constituted trespass to chattels.[2] Omnibus also requested damages between $500 and $1500 for each received facsimile advertisement. The trial court granted AT & T's motion for summary judgment. In five issues, Omnibus argues the trial court erred in granting summary judgment because AT & T did not establish as a matter of law it was entitled to judgment. We affirm in part and reverse and remand in part.

1. The Honorable Frances Maloney, Retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment. Justice Kinkeade participated in the original submission panel and the initial opinion of this Court. He retired before the rehearing and did not participate in this opinion on rehearing.

2. Omnibus sought and was denied class certification in its original petition. The trial

## BACKGROUND

Between January 11, 2000 and April 17, 2000, AT & T sent seven to eight facsimiles to Omnibus without prior consent or invitation.[3] AT & T moved for summary judgment, alleging the facsimiles at issue complied with the State Code's section 35.47 and the TCPA applies only to interstate facsimiles and does not apply to intrastate facsimiles, an award of $500 per infraction is unconstitutional because it is grossly disproportionate to actual damages, and Texas law does not recognize a cause of action for trespass to chattels. The trial court granted AT & T's motion in its entirety.

## SUMMARY JUDGMENT

We review summary judgments under well-established standards—the movant must show there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law; in deciding whether a disputed material fact issue exists that precludes summary judgment, we must take evidence favorable to the nonmovant as true and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant is entitled to summary judgment if the summary judgment evidence shows, as a matter of law, that the plaintiff cannot establish at least one element of his cause of action. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). Because the

court's denial of class certification is not an issue in this appeal.

3. It is undisputed AT & T sent the facsimile advertisements at issue. In its brief, AT & T states that this Court "may assume *arguendo* that all of the appellees sent these facsimiles or caused them to be sent."

propriety of a summary judgment is a question of law, we review the trial court's decision de novo. *Foreness v. Hexamer,* 971 S.W.2d 525, 527 (Tex.App.-Dallas 1997, pet. denied).

## THE TCPA

■ In its second issue, Omnibus contends the trial court should not have granted summary judgment because AT & T did not establish that the TCPA applies only to interstate facsimile advertisements. Omnibus argues that federal principles of statutory construction dictate that the TCPA applies to intrastate calls because the plain language, legislative history, and the Federal Communication Commission's (FCC) interpretation support such a finding. We agree.

### 1. Statutory Construction Under the Federal Law

■ In construing federal statutes, federal law mandates that we first look to the statute's language to determine if the language at issue has a "plain and unambiguous meaning." *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). We must interpret a statute as a "symmetrical and coherent regulatory scheme" and, if possible, fit all parts into a "harmonious whole." *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (citations omitted). When the statutory language is unclear, we turn to the legislative history. *Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (using Senate report as guidance). We give deference to an agency's reasonable interpretation of an ambiguous federal act if the agency is responsible for implementing that federal act. *United States v. Mead Corp.,* 533 U.S. 218, 227–28, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). The degree of defer-

ence a court owes is not at issue when the agency's interpretation is reasonable and consistent with the court's independent interpretation of the statute. *See Edelman v. Lynchburg Coll.,* 535 U.S. 106, 122 S.Ct. 1145, 1150, 152 L.Ed.2d 188 (2002).

### 2. Applicable Law

In 1991, Congress passed the TCPA to regulate unsolicited telephone calls and facsimiles. Pub.L. No. 102–243, 105 Stat. 2394–2402 (1991) (codified at 47 U.S.C. § 227 and various other sections). The TCPA amended the Communications Act of 1934. *See* 47 U.S.C. § 201 *et seq.* Although the Communications Act contains an interstate-only restriction, the TCPA itself contains a conforming amendment that expressly excepts the TCPA from the Communications Act's interstate-only restriction. 47 U.S.C. § 152(b) (1994); *Texas v. Am. Blastfax, Inc.,* 121 F.Supp.2d 1085, 1088 (W.D.Tex.2000); Hilary B. Miller & Robert R. Biggerstaff, *Application of the Telephone Consumer Protection Act to Intrastate Telemarketing Calls and Faxes,* 52 FED. COMM. L.J. 667, 674 (2000).

■ The TCPA provides, "It shall be unlawful for any person within the United States to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C); *Murphey v. Lanier,* 204 F.3d 911, 912 (9th Cir.2000). The statute defines the term "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4). Telephone lines, even when used intrastate, are part of an aggregate interstate system and are instrumentalities of interstate commerce. *United States v. Weathers,* 169 F.3d 336, 341 (6th

Cir.1999). Because Congress may regulate the instrumentalities of interstate commerce, Congress may regulate purely intrastate telephone activity to protect interstate commerce. *United States v. Gilbert,* 181 F.3d 152, 157–58 (1st Cir.1999); *Am. Blastfax,* 121 F.Supp.2d at 1087.

### 3. Application of Law to Facts

#### a. Plain Language

The TCPA does not specifically provide that it covers both interstate and intrastate activities. But, in expressly excepting the TCPA from the Communication Act's interstate-only restriction, the conforming amendment shows congressional intent that the TCPA apply to intrastate facsimiles. *Am. Blastfax,* 121 F.Supp.2d at 1088; *Hooters of Augusta, Inc. v. Nicholson,* 245 Ga.App. 363, 537 S.E.2d 468, 471 (2000) (holding Congress expressed its intent to regulate both interstate and intrastate communications by excepting the TCPA from interstate limitation of 47 U.S.C. § 152).

#### b. Legislative History

The legislative history supports the TCPA's application to both interstate and intrastate communications. Congressman Edward Markey, the sponsor of the House version of the TCPA, stated on the floor: "The legislation, *which covers both intrastate and interstate unsolicited calls,* will establish [f]ederal guidelines that will fill the regulatory gap due to differences in [f]ederal and [s]tate telemarketing regulations." 137 CONG. REC. E793 (Mar. 6, 1991) (statement of Rep. Markey) (emphasis added); *see also Am. Blastfax,* 121 F.Supp.2d at 1088 n. 2 (quoting same).

#### c. Administrative Interpretation

Because the Communication Act charges the FCC with promulgating rules and administering the TCPA, we defer to the FCC's interpretations of the Communications Act. *See* 47 U.S.C. § 227(c)(1). In a 1993 public notice entitled *Telephone Solicitations, Autodialed and Artificial or Prerecorded Voice Message Telephone Calls, and the Use of Facsimile Machines,* the FCC answered the question whether the TCPA applies to intrastate calls and facsimiles. In this public notice, the FCC explicitly stated, "Yes. FCC rules apply to in-state calls." *Consumer Alert,* 8 F.C.C.R. 480 (January 11, 1993).

Thus, in construing the federal statute itself, we conclude that the plain language, legislative history, and administrative interpretation indicate that Congress intended the TCPA to apply to both interstate and intrastate facsimile advertisements.

### THE STATE CODE

■ Construing the federal statute alone, however, does not fully resolve the question. Omnibus brings the claim under the state statute that permits a private right of action[4] in state court for the TCPA violations. TEX. BUS. & COM.CODE ANN. § 35.47(g).[5] AT & T contends that to render effective all of the provisions of section 35.47, we must necessarily construe a TCPA claim under subsection (g) as reaching only *interstate* claims. Otherwise, they argue, the TCPA's blanket pro-

---

**4.** Under the TCPA, a person has a private right of action for violations of the TCPA only "if otherwise permitted by the laws or rules of court of a State." 47 U.S.C. § 227(b)(3).

**5.** The statute was first enacted in 1989 and amended in 1999 and 2001. AT & T sent the complained-of facsimiles in 2000, so the form of the statute in effect included the 1999 amendments. Unless otherwise indicated, all references are to lettering in section 35.47 as amended in 1999. Act of June 18, 1999, 76th Leg., R.S., ch. 635, 1999 Tex. Gen. Laws 3203 (effective September 1, 1999).

hibition of all unsolicited facsimiles would swallow up the legislature's intended regulation of intrastate facsimiles through the other provisions of section 35.47.

### 1. Statutory Construction Under State Law

Our primary goal in interpreting a state statute is to ascertain and effectuate the legislature's intent. *In re Canales*, 52 S.W.3d 698, 701 (Tex.2001). We must give effect to every part of a statute if reasonably possible; we may not adopt a construction that will render any part of the statute inoperative, superfluous, or without legal effect. *Tex. Prop. & Cas. Ins. Guar. Ass'n v. Johnson*, 4 S.W.3d 328, 333 n. 5 (Tex.App.-Austin 1999, pet. denied).

### 2. Applicable Law

States have no independent regulatory power over interstate telemarketing activities. *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 513 (5th Cir.1997). Texas began regulating intrastate advertising by telephone or facsimile in 1989. Act of June 15, 1989, 71st Leg., R.S., ch. 783, 1989 Tex. Gen. Laws 3469 (effective Sept. 1, 1989) (codified at § 35.47 of the business & commerce code). Subsection

35.47(b) prohibited unsolicited telephone-facsimile advertisements for which the recipient was charged.[6] TEX. BUS. & COM. CODE ANN. § 35.47(b). Section 35.47 established criminal offenses only, with subsection (b) defining a class C misdemeanor. *Id.* § 35.47(f).

In 1999, the legislature amended the statute to provide a private right of action against those who violate section 35.47 itself or the TCPA, as follows:

> A person who receives a communication that violates 47 U.S.C. Section 227 [the TCPA], a regulation adopted under that provision, or this section [35.47] may bring an action against the person who originated the communication in a court of this state for an injunction, damages in the amount provided by this subsection, or both.

*Id.* § 35.47(g). The 1999 amendment also included two new restrictions on all facsimiles,[7] whether sent with consent or not. New subsection (c) prohibited all facsimiles transmitted between 11 p.m. and 7 a.m., and new subsection (d) required the sender to include a telephone number so the recipient could request that further transmissions be stopped. *Id.* § 35.47(c), (d).[8]

---

**6.** Subsection (b) provides as follows:

A person may not make or cause to be made a transmission for the purpose of a solicitation or sale to a facsimile recording device or other telecopier for which the person or entity receiving the transmission will be charged for the transmission, unless the person or entity receiving the transmission has given, prior to the transmission, consent to make or cause to be made the transmission.

TEX. BUS. & COM.CODE ANN. § 35.47(b) (un-amended to date).

**7.** The TCPA does not preempt state law that imposes more restrictive intrastate requirements. 47 U.S.C. § 227(e).

**8.** Subsections (c) and (d) read as follows:

(c) A person may not make or cause to be made a transmission for the purpose of a solicitation or sale to a facsimile recording device after 11 p.m. and before 7 a.m.

(d) A person who makes or causes to be made a transmission to a facsimile recording device for the purpose of a solicitation or sale shall include in the document transmitted ... a statement ... informing the recipient of a toll-free or local exchange accessible telephone number at which the recipient may notify the person not to send any further transmissions....

§ 1(c), (d), 1999 Tex. Gen. Laws at 3203. In 2001, subsection (d) was deleted from this section of the Code. Act of June 17, 2001, 77th Leg., R.S., ch. 1429, § 2, 2001 Tex. Gen. Laws 5108 (effective January 1, 2002).

### 3. Application of Law to Facts

Assuming, without deciding, that the legislature had the option of limiting the TCPA claims to reach interstate-only activity, we need not adopt AT & T's construction of section 35.47 to give effect to all of that section's terms. The TCPA prohibits only unsolicited facsimiles. 47 U.S.C. § 227(b)(1)(C). Our state-law regulations in subsections 35.47(c) and (d) go beyond the federal prohibitions in that they apply to all intrastate facsimiles whether sent with or without "consent." Thus, the state regulations under 35.47(c) and (d) remain viable even if we construe TCPA claims under (g) as reaching both intrastate as well as interstate facsimile transmissions.[9]

Neither does our construction render subsection 35.47(b) superfluous. Subsection (b) proscribes only those intrastate facsimiles that are sent without consent and for which the recipient is charged. If the TCPA reaches purely intrastate activity, its proscription of all unsolicited facsimiles does appear to swallow up private actions based solely on subsection (b). Nonetheless, subsection (b) remains viable as defining a class C misdemeanor, as was its purpose when originally promulgated in 1989. *Id.* § 35.47(f). We resolve issue two in favor of Omnibus.

### State Cause of Action under Section 35.47(b)

■ In issue one, Omnibus argues that the trial court erred in granting summary judgment on its cause of action under subsection 35.47(b). It maintains a fact issue exists on whether it was "charged for the transmission" of the subject facsimiles. Section 35.47(b) provides

A person may not make or cause to be made a transmission for the purpose of a solicitation or sale to a facsimile recording device or other telecopier for which the person or entity receiving the transmission will be *charged for the transmission,* unless the person or entity receiving the transmission has given, prior to the transmission, consent to make or cause to be made the transmission.

Tex. Bus. & Com.Code Ann. § 35.47(b) (emphasis added).

Omnibus's president stated in his affidavit that Omnibus was "charged" for the facsimile transmissions "in the form of ink, paper, usage of the machine, maintenance, and personnel time in reviewing and disposing of the facsimiles." Omnibus urges that the ordinary meaning of "charge" includes "expenses" incurred in connection with a transaction. Black's Law Dictionary 212 (5th ed.1979). That dictionary defines "expense," in turn, as including "the expenditure of money, time, labor, resources, and thoughts." *Id.* at 518.

Omnibus also argues that the legislature did not intend to limit "charged for the transmission" to include only charges incurred for telephone "calls" to a facsimile machine. In section 35.47(a),[10] which con-

---

9. AT & T urges that the legislative history, specifically the committee hearing on the house bill that resulted in the 1999 amendments, indicates that the legislature intended to restrict the federal-law claims to interstate facsimiles only. Nowhere in the record can we find evidence of this legislative history. Furthermore, even if the record showed that trial court had the benefit of the legislative history, AT & T's argument fails. In a committee hearing, one house member's understanding that the TCPA reaches only interstate claims does not vitiate all other contrary evidence.

10. Section 35.47(a) provides

A person may not make a telephone call or use an automatic dial announcing device to make a telephone call for the purpose of making a sale if:

(1) the person making the call or using the device knows or should have known

cerns telephone solicitation, the legislature chose that specific language when the number called is a "mobile telephone number for which the called person will be charged for that specific call." Therefore, Omnibus argues because the legislature omitted the word "call" in 35.47(b), we should interpret a "charge" for the transmission to a facsimile machine more broadly to include more than "per call" charges. *See Reames v. Police Officers' Pension Bd.,* 928 S.W.2d 628, 632 (Tex.App.-Houston [14th Dist.] 1996, no writ) (giving each word and phrase effect if possible); *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 552 (Tex.1981) (presuming word was excluded for a purpose).

AT & T argues that we must construe "charged for the transmission" according to its ordinary and natural meaning. *Satterfield v. Satterfield,* 448 S.W.2d 456, 459 (Tex.1969). It contends that "charged" does not ordinarily mean one incurs expenses, but that one receives a bill from a third party. *See* WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (2d ed.). Further, they argue, every transmission involves the costs asserted by Omnibus. If the term "charged for the transmission" includes those costs, all facsimiles fall within the ambit of section 35.47(b), thus rendering the term meaningless. It contends that to give meaning to that term, we must construe "charged" to include only transmissions for which the consumer is billed "per call" or "per transmission."

AT & T also argues that Omnibus misconstrues section 35.47(a) concerning solicitations using voice calls. In natural usage, one makes voice "calls" but one sends or "transmits" a facsimile. Thus the legislature's use of the term "call" in 35.47(a) to refer to voice calls and its use of "transmission" in 35.47(b) to refer to facsimiles evinces an intent to use parallel terms. Likewise, they argue, the legislature intended parallel protections in the two subsections. As with voice calls in subsection (a), subsection (b) prohibits only those facsimiles for which the recipient was billed by a telecommunications carrier or other third party.

We reject AT & T's argument. Section 35.47(b) prohibits unsolicited facsimiles that impose involuntary expenses on the recipient. To limit the statute's prohibition to those instances where a third party bills the recipient for specific costs associated with the facsimile is too restrictive to achieve the statute's purpose. That the operation of most facsimile machines involves such costs, and thus most unwanted facsimiles will fall within the prohibition of subsection (b), does not defeat the purpose of the statute. Rather, the predictable inclusion of most facsimiles sent without prior consent will discourage their transmission and thus serves the statute's evident purpose.

■ Accordingly, Omnibus's evidence raised a fact issue whether it was "charged for the transmission" of the subject facsimiles under section 35.47(b). The trial court erred in granting summary judgment on this cause of action. We resolve issue one for Omnibus.

### DUE PROCESS

In its third issue, Omnibus contends the trial court should not have granted summary judgment because AT & T did not establish that the damage awards under 47

that the called number is a mobile telephone for which the called person will be *charged for that specific call;* and
(2) the called person has not given consent to make such a call to the person calling or using the device or to the business enterprise for which the person is calling or using the device.
TEX. BUS. & COM.CODE ANN. § 35.47(a) (emphasis added).

U.S.C. § 227 and section 35.47 violated either the United States or Texas constitutions. Having decided the trial court should not have granted summary judgment on all issues save one, the trial court erred in reaching the issue of damages. We resolve issue three for Omnibus.

### TRESPASS TO CHATTELS

In its fourth issue, Omnibus contends the trial court should not have granted summary judgment because AT & T did not establish whether Texas law recognizes a cause of action for trespass to chattels under the facts of this case.

### 1. Applicable Law

Texas classifies an interference with a chattel that "compels the defendant to pay the full value of the thing with which he has interfered" as conversion; but, if the interference with a chattel does not require the defendant to pay full value, it "may constitute trespass to chattels." PROSSER & KEETON ON TORTS § 14, at 85–86 (5th ed.1984). To interfere wrongfully with the use or possession of property is a trespass to chattels. *Jarvis v. S.W. Bell Tel. Co.*, 432 S.W.2d 189, 191 (Tex.Civ. App.-Houston [14th Dist.] 1968, no writ). For liability to attach, causing *actual damage* to the property or *depriving the owner of its use for a substantial period* must accompany the wrongful interference. *Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198, 201 (Tex.1981).

### 2. Application of Law to Facts

Omnibus alleged and offered evidence that AT & T wrongfully commandeered its facsimile machines. In doing so, AT & T dispossessed Omnibus's use of the machines and misappropriated its paper and toner when printing the advertisements. Omnibus's pleadings did not allege and the summary judgment evidence did not show that actual damage occurred to Omnibus's facsimile machine or that the printing of facsimile advertisements deprived Omnibus of the use of its facsimile machine for a substantial period of time. *See Zapata*, 615 S.W.2d at 201. Accordingly, we resolve the fourth issue against Omnibus.

In its fifth issue, Omnibus generally complains of the trial court's granting summary judgment. Because we resolve issue number four in AT & T's favor and issues one, two, and three in Omnibus's favor, we do not reach Omnibus's general complaint that summary judgment was in error.

We affirm the trial court's judgment as to trespass to chattels and reverse and remand on all other issues.