# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00436-CV

---

**Anthony Bowers, Appellant**

**v.**

**Katina Bowers and A'Nya Bowers, Appellees**

---

**FROM THE 146TH DISTRICT COURT OF BELL COUNTY**
**NO. 22DCV330494, THE HONORABLE JACK WELDON JONES, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This appeal arises from a dispute among family members about the purchase and use of a car. Appellant Anthony Bowers challenges the sufficiency of the evidence supporting the trial court's final judgment in favor of his ex-wife Katina Bowers and their daughter A'Nya Bowers. After a bench trial, the trial court rendered a judgment that Anthony take nothing on his claims against Katina and A'Nya for conversion, trespass to chattels, and unjust enrichment. Because we conclude that the evidence supports the trial court's implied findings and its verdict, we affirm the trial court's judgment.

# BACKGROUND[1]

In November 2020, Anthony bought a 2020 Hyundai Elantra for A'Nya to use. The loan for the vehicle purchase was in Anthony's name. The parties dispute the details of what they had agreed to about who would make the car payments and for how long, as we will explain in detail below. It is undisputed that Katina made the car payments until Anthony stopped paying child support in May 2021, when A'Nya graduated from high school. It is also undisputed that Anthony began making the monthly payments then and made them until January 2022. A'Nya undisputedly made the monthly payments from January 2022 until at least the summer of 2022.

In January 2022, Anthony (who lives in the state of Washington) came to Texas to retrieve the car. It is undisputed that Anthony first appeared unannounced at Katina's home with the police and then called a tow truck to pick up the car. When Katina and A'Nya arrived home, they refused to allow him to take the car, and the police gave Anthony a trespass warning, directing him not to return to Katina's property.

On January 28, 2022, Anthony, through his counsel, sent Katina and A'Nya a demand letter seeking the return of the car. In the letter, Anthony asserted that he had made the monthly payments of $350.09 since May 2021, for a total of $3,150.81. Anthony sought the return of the vehicle, reimbursement of the $3,150.81 in car payments, and attorneys' fees in the amount of $500.

Katina and A'Nya did not return the vehicle, and Anthony filed suit against them in March 2022, alleging claims for conversion and unjust enrichment and seeking the return of the

---

[1] The facts in this background section include undisputed facts from the parties' pleadings, testimony at trial, and Anthony's appellate brief, except where a dispute is noted. Katina and A'Nya appeared pro se in the trial court, and on appeal, they did not file an appellees' brief.

vehicle, damages in the amount of the car's alleged value of $27,206, and attorneys' fees. Katina answered by filing a notarized affidavit denying Anthony's allegations. In January 2023, Anthony filed a first amended petition, adding a claim for trespass to chattels and an allegation that he became aware in December 2022 that Katina and A'Nya failed to properly maintain the car, resulting in damages to the car in excess of $10,000, and raising the amount of damages he sought to $37,206.

When he amended his petition, he alleged the vehicle had not been returned to him. By the time of trial in March 2023, however, he had the car in his possession because he had it towed to Washington from the Hyundai dealership in Killeen. At trial, he sought an additional $2,400 in damages for the cost of having the vehicle towed to Washington from Texas.

After the bench trial, the trial court signed a take-nothing judgment in Katina and A'Nya's favor. No findings of fact or conclusions of law were made or requested. This appeal followed.

## ANALYSIS

On appeal, Anthony argues in one issue that the evidence was legally and factually insufficient to support the trial court's verdict. Underlying the trial court's verdict that Anthony take nothing on his claims for conversion, trespass to chattels, and unjust enrichment are three key implied findings: (1) the parties did not enter into an enforceable oral contract or contracts about who would make the car payments, (2) the car was a gift from Anthony and Katina to A'Nya, and (3) A'Nya and Katina did not cause the damage to the car by failing to properly maintain it.[2] We

---

[2] We note that even though Anthony argued both at trial and on appeal that the parties entered into an enforceable contract or contracts, he did not sue for breach of contract. The trial court stated on the record at the conclusion of the bench trial that it "cannot find that there was

3

first address the evidence supporting the trial court's implied findings that there was no enforceable contract or contracts among the parties and that the car was a gift to A'Nya because these findings concern the rightfulness of A'Nya's possession of the car. We then turn to the implied finding that A'Nya and Katina did not cause damage to the car, which is an element of Anthony's claims for conversion and trespass to chattels and is also related to his unjust-enrichment claim.

**Standard of review**

When neither party requests findings of fact and conclusions of law following a bench trial, we imply all fact findings necessary to support the trial court's judgment. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). When the appellate record includes the reporter's and clerk's records, a party may challenge implied findings on legal- and factual-sufficiency grounds. *Id.*

When a party attacks the legal sufficiency of an adverse finding on an issue on which he bears the burden of proof at trial, he must demonstrate on appeal that the evidence conclusively establishes "all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)). In this case, Anthony, as the plaintiff, bore the burden of proof to establish all his claims and the foundational issue of whether the parties had entered into an enforceable contract or contracts. Anthony contends that the evidence establishes the existence of an enforceable contract (or contracts) as a matter of law; he further contends that based on the alleged contract or contracts,

---

sufficient evidence that there was an enforceable contract or agreement between the parties that has resulted in the damage that is being claimed here." As stated above, the trial court did not, however, make an express finding of fact on that or any other issue. We address the issues as Anthony tried them below and has presented them on appeal.

4

the evidence also establishes his claims for conversion, trespass to chattels, and unjust enrichment as a matter of law.

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When reviewing the evidence, we "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* Thus, we consider the evidence "in the light most favorable to the verdict," and we "indulge every reasonable inference that would support it." *Id.* at 822. If the evidence allows for only one inference, neither the factfinder nor the reviewing court may disregard it. *Id.* We will sustain the legal-sufficiency issue only if the evidence for each challenged finding conclusively establishes the contrary proposition. *Dow Chem.*, 46 S.W.3d at 241.

When a party attacks the factual sufficiency of an adverse finding on an issue on which he bears the burden of proof at trial, he "must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Id.* at 242. We must consider and weigh all the evidence pertinent to the adverse finding, and we may set aside the finding "only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.*; *see also Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016).

The factfinder is the sole judge of the credibility of the witnesses and the weight to give to their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The factfinder may choose to believe one witness and disbelieve another, and as a reviewing court, we may not impose our own opinion if it is contrary to the factfinder's opinion. *City of Keller*, 168 S.W.3d at 819. Because most credibility questions are implicit, not explicit, in a factfinder's

5

verdict, we must assume the factfinder credited testimony favorable to the verdict and disbelieved testimony contrary to it. *Id.* A factfinder "may disregard even uncontradicted and unimpeached testimony from disinterested witnesses." *Id.* at 820.

It is the province of the factfinder to resolve conflicts in the evidence; thus, we must assume the factfinder resolved all conflicts in support of the verdict. *Id.* We must affirm the judgment if it can be upheld on any legal theory that is supported by the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

With these principles in mind, we begin by reviewing whether the evidence in the record supports the trial court's implied finding that no valid, enforceable oral contract existed among the parties.

**Implied finding that the parties did not enter into a contract or contracts**

To prove the existence of a valid, legally enforceable contract, Anthony must establish the following elements: "(1) an offer was made; (2) the other party accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018). Whether the parties reached an agreement is a question of fact. *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Whether an agreement is legally enforceable, however, is a question of law. *Id.*

An oral contract may be proved by circumstantial and direct evidence. *PGP Gas Prods., Inc. v. Reserve Equip., Inc.*, 667 S.W.2d 604, 607 (Tex. App.—Austin 1984, writ ref'd

6

n.r.e.). When deciding whether an oral contract exists, we use an objective standard to determine whether there was an offer and acceptance, and thus a "meeting of the minds," that is, "a mutual understanding and assent to the expression of the parties' agreement." *Domingo v. Mitchell*, 257 S.W.3d 34, 39-40 (Tex. App.—Amarillo 2008, pet. denied). We consider the objective evidence of what the parties did and said, not their subjective states of mind. *Id.* at 39 ("[C]ourts look at the communications between the parties and the acts and circumstances surrounding those communications.").

Anthony argues on appeal that the evidence of the parties' course of performance conclusively establishes a meeting of the minds on the essential terms of the alleged contract or contracts with Katina and A'Nya. Katina and A'Nya asserted that the car was a gift from her parents to A'Nya and that there were no stipulations placed on her use of the car. Reviewing the evidence of the parties' conduct and communications in the light most favorable to the verdict and indulging every reasonable inference that supports it, as we must, we conclude that Anthony has not carried his burden to establish the existence of an enforceable contract as a matter of law.

In his live petition, Anthony alleges that he entered into an oral agreement with A'Nya on November 5, 2020, which would allow her to use the car "specifically while she attended school and was making the monthly car note payments" in the amount of $350.09. Anthony now contends that there were two oral agreements about the car, an original agreement with Katina and a later agreement with A'Nya.

At trial, Anthony testified that when the car was purchased in November 2020, "the agreement was that Katina was going to make the monthly payments for the car until A'Nya's school money had kicked in, and then we would make an agreement to have arrangements for A'Nya to officially start paying for the car herself. The agreement was that I would continue to

7

pay the monthly note." Anthony further testified that Katina "was making the monthly notes on time, and I was receiving the payments so I could make the payment on the car." On appeal, he asserts that this first agreement was between him and Katina.

Anthony also testified at trial that he and A'Nya had made an agreement on an unspecified date before she started college in the fall of 2021 that A'Nya would start making the car payments once she began receiving financial aid for school from his Veterans Affairs benefits.[3] It is undisputed that A'Nya began receiving the financial aid in December 2021 toward the end of her first semester. Anthony testified that he sent A'Nya a text message in January 2022 informing her that it was time for her to start making payments on the car. It is undisputed that A'Nya made payments from January 2022 until at least the summer of 2022. However, both Katina and A'Nya testified that A'Nya never entered into any agreement with Anthony about the car.

Anthony argues that Katina's and A'Nya's payment of the car loan for many months contradicts their contention that the car was a gift to A'Nya and that this "course of performance" is evidence that each of the parties had consented to the terms of the agreement. However, a contract generally "is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000). "The terms of an oral contract must be definite, certain, and clear as to all essential terms; or the contract will fail for indefiniteness." *Farone v. Bag'n Baggage, Ltd.*, 165 S.W.3d 795, 802 (Tex. App.—Eastland 2005, no pet.).

When reviewing the evidence in the light most favorable to the verdict, we must assume the factfinder resolved all conflict in the evidence in support of the verdict. *City of Keller*,

---

[3] Anthony testified that he and A'Nya made their agreement in the presence of A'Nya's uncle. A'Nya's uncle did not provide testimony or other evidence at trial.

8

168 S.W.3d at 820. Here, because we imply a finding by the trial court that no enforceable contract existed among the parties, we must assume that the trial court credited Katina's and A'Nya's testimony relevant to the terms of the alleged contract. While the parties agreed that the car had been purchased for A'Nya's use and that the loan was in Anthony's name, they otherwise disagree regarding the terms of the agreement or agreements about who would make the car payments and when. "If the parties to an oral contract testify to conflicting terms, a reviewing court must presume the terms were those asserted by the winner." *Id.* at 819.

Taking each contract in turn, we first address the alleged contract between Anthony and Katina. Katina testified that she and Anthony agreed in November 2020 that she would make the car payments as long as he made child-support payments and that he had agreed to make child-support payments until A'Nya graduated from college. Katina was also making the insurance payments for the car. According to Katina, when Anthony found out in May 2021 that his continuing to pay child support after A'Nya graduated from high school was not mandatory and child support was no longer going to be withheld from his paycheck, he stopped paying child support. At that point, Katina informed Anthony that he would need to take over the car payment for the remainder of the loan because she had been making that payment with the child-support money, but she told him she would continue making the $450 monthly insurance payment. Katina stopped making the car payments in May 2021, and Anthony began making them then. Katina's testimony about the terms—that she would make the car payments while Anthony was making child-support payments—reasonably explains her course of conduct. We must assume that the trial court as factfinder credited Katina's testimony and disbelieved Anthony's. *See id.* We conclude that this evidence would enable a reasonable and fair-minded factfinder to reach the trial court's implied finding that there was no enforceable contract between Katina and Anthony that

9

was breached and resulted in any wrongful possession or use of the vehicle. We also conclude that the trial court's finding is not against the great weight and preponderance of the evidence.

As for the alleged second contract between Anthony and A'Nya, both Katina and A'Nya testified that A'Nya had never made an agreement with Anthony that A'Nya would begin making the car payments once she began getting her financial aid; her parents told A'Nya that the car was a gift. Katina testified that A'Nya was at Katina's home in January 2022 because A'Nya was pregnant and her son was due in February. She also attested that A'Nya continued attending school online during that spring semester. While she was home, A'Nya showed Katina text messages between A'Nya and Anthony. Katina testified that when Anthony texted A'Nya in January 2022 that she needed to start making the car payments, A'Nya told him she needed the money to take care of her son. A'Nya testified that she had made a car payment in January 2022 after Anthony had threatened to take the car away if she did not make the payments. When Anthony came to Katina's house in Texas in January 2022 to retrieve the car, A'Nya again told him that she needed the car and that she was going to school and would have a son and that she needed the car for that purpose. Katina testified that A'Nya stopped making the payments in the summer of 2022 because school was out for the summer and she was not receiving any financial aid for the summer.

Katina's and A'Nya's testimony reasonably explains why A'Nya made some car payments even though she had been told the car was a gift. The trial court as factfinder could reasonably infer that after Anthony texted A'Nya in January that she needed to start making the car payments, even if it had initially been given to her as a gift, A'Nya decided that the car was a necessity and that she would pay for it because Anthony indicated he would no longer make the payments. We must assume that the trial court as factfinder credited A'Nya's and Katina's

testimony and disbelieved Anthony's. *See id.* We conclude that this evidence would enable a reasonable and fair-minded factfinder to reach the trial court's implied finding that there was no enforceable contract between A'Nya and Anthony that was breached and resulted in any wrongful possession or use of the vehicle. We also conclude that the trial court's finding is not against the great weight and preponderance of the evidence.

Because the parties testified to conflicting terms about whose responsibility it was to make the car payments in different circumstances, we must assume that the trial court concluded that there was never a meeting of the minds on the essential terms of Anthony's alleged contract or contracts with Katina and A'Nya. The conflicting testimony precludes Anthony from establishing as a matter of law that the parties reached an agreement about who would make the car payments and under what circumstances, much less that they entered into a legally enforceable agreement. We hold that legally and factually sufficient evidence supports the trial court's implied finding that no enforceable contract or contracts existed among the parties that could have been breached and resulted in any wrongful possession or use of the vehicle.

**Implied finding of gift**

Given the testimony at trial and the trial court's implied finding that no enforceable contract existed among the parties, we also conclude that it is reasonable to infer in support of the verdict that the trial court found that the car was a gift from Anthony and Katina to A'Nya. Katina and A'Nya asserted in their answer and testified at trial that Anthony and Katina intended the car to be a gift to A'Nya. The burden was on A'Nya to establish that she acquired the car by gift. *See Inwood Nat'l Bank v. Fagin*, 706 S.W.3d 342, 348 (Tex. 2025). To establish the existence of a gift, the party must prove (1) the donor's intent to make a gift (2) delivery of the property, and

11

(3) acceptance of the property. *Id.* ("[T]here must be a delivery of possession of the subject matter of the gift by the donor to the donee, and a purpose on the part of the donor to vest in the donee, unconditionally and immediately, the ownership of the property delivered." (quoting *Wells v. Sansing*, 245 S.W.2d 964, 965 (Tex. 1952)). "A gift is a voluntary transfer of property to another made gratuitously and without consideration." *Maldonado v. Maldonado*, 556 S.W.3d 407, 415 (Tex. App.—Houston [1st Dist.] 2018, no pet.). A conveyance from a parent to a child can give rise to a presumption of gift. *Rusk v. Rusk*, 5 S.W.3d 299, 303 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *Ellebracht v. Ellebracht*, 735 S.W.2d 658, 659 (Tex. App.—Austin 1987, no writ).

Katina testified that she and Anthony intended to give the car to A'Nya and that they placed no stipulations or conditions on A'Nya's use of the car. She testified that she had agreed to make the car payments as long as Anthony continued to pay her child support. A'Nya also testified that both her parents told her the car was a gift. Anthony testified that his agreement with Katina was that she going to make the monthly car payments for the car until A'Nya began receiving financial aid, and then they "would make an agreement to have arrangements for A'Nya to officially start paying for the car herself." Anthony never expressed any intention to use or have physical possession of the car until after he informed A'Nya in January 2022 that she needed to start making the monthly payments and she initially objected to doing so.

The trial court as factfinder was entitled to believe Katina's and A'Nya's testimony and disbelieve Anthony's testimony. *See, e.g.*, *Kelly v. Kelly*, 634 S.W.3d 335, 357 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (deferring to trial court's decision to resolve conflicting testimony in favor of wife, when wife testified that car was gift from husband, and husband testified that it was not a gift). We hold that Katina's testimony and the evidence that she made

12

the monthly payments until Anthony stopped paying child support constituted more than a scintilla of evidence supporting the trial court's implied finding that Anthony and Katina intended to give the car to A'Nya. *See McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 392 (Tex. 2019) (explaining that no-evidence standard of review is applied when appellee bears burden of proof on issue and that reviewing court will conclude evidence is legally insufficient to support finding when "the evidence offered to prove a vital fact is no more than a mere scintilla"). We also hold that the evidence was factually sufficient to support the implied finding that the car was a gift. *See Crosstex*, 505 S.W.3d at 615 (explaining that reviewing court sets aside finding for factual insufficiency "only if, after considering and weighing all of the evidence in the record pertinent to that finding, it determines that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered").

These holdings—that sufficient evidence supports the implied findings that there was no enforceable contract among the parties and that the car was a gift to A'Nya from Anthony and Katina—inform our analysis of Anthony's challenge to the trial court's verdict on his claims of conversion, trespass to chattels, and unjust enrichment. Although we have concluded that Katina and Anthony intended to give the car to A'Nya, because the loan for the car was in Anthony's name and the title would be in his name when the loan was paid off, he arguably retained a possessory interest in the car, so we must consider whether the trial court erred in denying those claims. We turn now to the third implied finding—that A'Nya and Katina did not cause damage to the car—an element related to each of Anthony's claims, as we explain below.

13

**Implied finding that A'Nya and Katina did not cause damage to the car**

Anthony also contends that insufficient evidence supports the trial court's implied findings that he did not prove the elements of his claims for conversion, trespass to chattels, or unjust enrichment. After setting forth the elements of conversion and trespass to chattels, we will turn to the element of causation, again reviewing the evidence in the light most favorable to the verdict and indulging every reasonable inference that supports it to determine whether Anthony has carried his burden on appeal to establish causation (and thus, conversion and trespass to chattels) as a matter of law. Finally, we will consider whether Anthony carried his burden on appeal to establish unjust enrichment as a matter of law.

### *Elements of conversion and trespass to chattels*

Conversion and trespass to chattels are torts designed to protect against interference with a person's possessory interest in personal property. *Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198, 201 (Tex. 1981). Common to Anthony's claims for both conversion and trespass to chattels is the requirement that he must prove damages caused by the conversion or trespass. The measure of recoverable damages differs for the two claims.

Conversion is "[t]he unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights." *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). To prevail on a conversion claim, a plaintiff must prove that at the time of the alleged conversion, (1) the plaintiff owned, legally possessed, or was entitled to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff

14

demanded return of the property; and (4) the defendant refused to return the property. *Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 341 (Tex. App.—Austin 2004, no pet.). "Use of property by a person lawfully in possession becomes conversion if the use so departs from the conditions under which she received the property as to amount to an assertion of right inconsistent with that of the owner." *Pierson v. GFH Fin. Servs. Corp.*, 829 S.W.2d 311, 314 (Tex. App.—Austin 1992, no writ).

To recover for conversion, the plaintiff must prove damages and that the defendant's conversion was the proximate cause of those damages. *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 148 (Tex. 1997) (per curiam); *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 685 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). "Generally, the measure of damages for conversion is the fair market value of the property at the time and place of the conversion." *United Mobile Networks*, 939 S.W.2d at 147-48.

Trespass to chattels is wrongful interference with or injury to another's personal property "that causes actual damage to the property or deprives the owner of its use for a substantial period of time." *Armstrong v. Benavides*, 180 S.W.3d 359, 363 (Tex. App.—Dallas 2005, no pet.). Liability for trespass "does not attach, unless the wrongful detention is accompanied by actual damage to the property or deprives the owner of its use for a substantial period of time." *Zapata*, 615 S.W.2d at 201. Damages for trespass to chattels are limited to the diminished value of the property and the damage to the owner's interest. *Simmonds v. TDCJ*, No. 10-07-00361-CV, 2010 WL 654498, at *8 (Tex. App.—Waco Feb. 24, 2010, no pet.) (mem. op.) (citing RESTATEMENT (SECOND) OF TORTS § 222A cmt. c (AM. L. INST. 1965)).

Trespass rises to the level of a conversion "if the wrongful detention seriously interferes with the owner's right to control" the personal property. *Zapata*, 615 S.W.2d at 201.

15

Destruction of personal property may constitute both a conversion of the property and a trespass to chattel. *Carpenter v. Carpenter*, No. 02-11-00266-CV, 2012 WL 2579498, at *4 (Tex. App.—Fort Worth July 5, 2012, pet. denied) (mem. op.) (citing *Mountain States Tel. & Tel. Co. v. Vowell Constr. Co.*, 341 S.W.2d 148, 150 (Tex. 1960) (noting that "[d]estruction of, or injury to, personal property, regardless of negligence, may be a trespass"); RESTATEMENT (SECOND) OF TORTS §§ 216-22 (AM. L. INST. 1965)).

In his live petition, Anthony alleges that A'Nya and Katina wrongfully exercised dominion and control over the car by withholding it from him after he made a demand for its return and by causing "significant damage" to the car because they failed to properly maintain it. He seeks damages in the amount of the car's purchase price of $27,206, plus $10,000 for its repair and $2,400 for towing costs. On appeal, Anthony focuses on his allegation that A'Nya and Katina damaged the car by not properly maintaining it. Because the trial court ordered that Anthony take nothing on his conversion and trespass claims, we will presume an implied finding by the trial court that A'Nya and Katina did not cause the damage to the car.

### *Evidence related to causation*

Anthony contends that the evidence establishes as a matter of law that A'Nya and Katina damaged the car by not properly maintaining it. In his petition, he alleges that A'Nya and Katina failed to have the oil changed in the car for over 20,000 miles, resulting in "sludge" in the engine and the need for a $10,000 repair. Anthony called the service advisor from the Hyundai dealership as a witness at trial.

The service adviser testified that A'Nya and Katina had brought the car in for service in December 2022 because the "check engine" light was on and the 12-volt outlets were

16

not working. The service advisor confirmed that the car had a little over 20,000 miles on it. She testified that no oil change had been documented on CarFax where the dealership technicians document maintenance work, even though it was recommended to get the oil changed every 7,500 to 8,000 miles. The advisor testified about what the technician had told her about the car's condition. The technician told her that there had never been an oil change on the car, which caused the oil to sludge and meant that the car needed a new engine, which would not be covered under the warranty based on his conclusion that the damage was due to lack of maintenance. The advisor testified that after she informed Katina that the repairs would cost over $9,000, Katina decided to leave the car there. When the advisor and her manager were trying to decide what to do with the vehicle, they realized it was in Anthony's name, so the advisor reached out to him and informed him of the situation. A photograph of the advisor's estimate of the repairs and their cost was introduced into evidence.

The advisor testified that Anthony eventually had the car towed to Washington. Anthony paid a $413 diagnostic fee to the dealership. He asked if the dealership would purchase it as is, but the dealership declined because of the car's nondrivable condition.

Both Katina and A'Nya testified that A'Nya had gotten the oil changed in the car one time. Katina also testified that there had been a tire rotation. Katina testified that whenever they took the car to the dealer, the dealership always had trouble finding the records for the car, such as A'Nya's warranty information, because the car was under Anthony's name, not A'Nya's or Katina's name. Katina testified that she told A'Nya that while they could set up a payment plan to pay for the $9,000 in repairs, Anthony may still try to get the car. She advised A'Nya that the best thing to do was to leave the car at the dealership.

17

In addition, Katina elicited testimony from the advisor on cross-examination that there had been a recent change in ownership for the dealership and that the advisor was not sure how far back the documentation from the prior owners had been kept. The advisor confirmed that the car had been driven to the dealership and was running when brought in for service. The advisor additionally confirmed that at the time of trial Hyundai had issued a recall on engines that included a software update and oil-consumption tests "for the engine consuming more of the oil." The advisor testified that if the software update did not work on a given car, then a new engine would be installed.

Proximate cause consists of cause in fact and foreseeability. *Bush v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.*, — S.W.3d —, No. 23-0460, 2025 WL 1478330, at \*5 (Tex. May 23, 2025) (citing *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)). A plaintiff establishes cause in fact by showing the "'act or omission was a substantial factor in bringing about injury,' without which the harm would not have occurred." *Boys Clubs*, 907 S.W.2d at 477 (quoting *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995)). The trial court heard conflicting testimony from the service advisor and Katina and A'Nya about whether an oil change had ever been done on the car. He also heard testimony from both Katina and A'Nya about recordkeeping issues at the dealership. The service advisor also confirmed that Hyundai had issued a recall for that model car because of oil-consumption issues.

As the sole judge of the credibility of the witnesses and the weight to give to their testimony, we conclude that the trial court reasonably could have found that Katina and A'Nya did not cause the damage to the car's engine. The evidence supports an implied finding that Katina and A'Nya did not cause a "destruction of personal property" that would constitute either

18

conversion or a trespass to chattel. *See Carpenter*, 2012 WL 2579498, at \*4. We hold that legally and factually sufficient evidence supports the trial court's verdict that Anthony take nothing on these claims.

### *Evidence related to unjust enrichment*

In Anthony's live petition, he alleges that A'Nya and Katina's retention of the car would be an unjust enrichment to them and "is unconscionable and inequitable," and he seeks return of the car. However, by the time of trial, Anthony had retrieved the car from the dealership. On appeal, Anthony argues that A'Nya and Katina "wrongfully secured a benefit that it would be unconscionable to retain" because they had possession of Anthony's $27,206 car, "per their agreement, from November 2020 until Anthony finally had the undrivable car returned to him" in January 2023, "still owing $12,900 on the car and facing a $10,000 repair bill to make it drivable again." In addition, at trial, he sought a judgment that included those amounts, plus the $2,400 cost to have the car towed to Washington and $3,000 in attorneys' fees.

A party may recover under the theory of unjust enrichment when someone has obtained a benefit from him "by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Anthony does not explain how the evidence establishes as a matter of law that A'Nya and Katina obtained a benefit from him under this theory. The principle of unjust enrichment has also been described as the basis for a quantum meruit claim. *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985). To prove a quantum meruit claim, Anthony must establish the following elements:

1)      valuable services were rendered or materials furnished;

2)      for the person sought to be charged;

19

3)      which services and materials were accepted by the person sought to be charged, used and enjoyed by him;

4)      under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Vortt Expl. Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). Anthony does not articulate how the evidence establishes as a matter of law his claim for unjust enrichment or quantum meruit.

The evidence shows that Katina and A'Nya made the monthly payments on the car from November 2020 through May 2021 and then again from January 2022 until at least the summer of 2022. Anthony does not argue either that his having the car towed to Washington benefits Katina and A'Nya or that he has paid to have the car repaired for their benefit. The same evidence that supports both the trial court's implied finding that the parties did not have an enforceable agreement about who would make the car payments and when and its implied finding that the car was a gift to A'Nya also supports an implied finding that there were not circumstances present here that "reasonably notified" A'Nya and Katina that Anthony was expecting them to pay him either for car payments he made or for having the car towed. Even if we construe Anthony's argument to be that A'Nya and Katina should pay for the $10,000 car repair, given our conclusion that the evidence supports the trial court's implied finding that A'Nya and Katina did not cause the damage to the car, the evidence also supports an implied finding that the circumstances present here did not reasonably notify A'Nya and Katina that Anthony was expecting them to pay for the car repair. We hold that legally and factually sufficient evidence supports the trial court's verdict that Anthony take nothing on his claim for unjust enrichment.

20

Because we conclude that the evidence supports the trial court's verdict on each of Anthony's claims, we overrule Anthony's sole issue.

## CONCLUSION

Having held that legally and factually sufficient evidence supports the trial court's verdict, we affirm the judgment.

_____

Gisela D. Triana, Justice

Before Justices Triana, Kelly, and Crump

Affirmed

Filed:   July 3, 2025